BEVERLY ANDERSON,              CASE NO**:** 1:21-cv-00197-PLM-SJB
individually and on behalf of all     CLASS ACTION
others similarly situated,

      Plaintiff,                  HON. PAUL L. MALONEY

v.

CATALINA STRUCTURED FUNDING, INC.,

      Defendant.
_____/


## DEFENDANT CATALINA STRUCTURED FUNDING, INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT


Defendant Catalina Structured Funding, Inc. ("Catalina") respectfully requests that the Court dismiss the First Amended Class Action Complaint (Dkt. No. 12, the "FAC") of Plaintiff Beverly Anderson ("Plaintiff"), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this Motion, Catalina hereby submits the attached Memorandum and states as follows:

1.      In order to state a claim under the Do-Not-Call ("DNC") provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), a plaintiff must allege facts demonstrating a "telephone solicitation." The statute defines a "telephone solicitation" as a call whose purpose is to encourage the purchase or rental of, or investment in, the caller's property, goods, or services. A call in which the caller attempts to *buy* something from the other party is *not* a telephone solicitation under the statutory definition.

2.      Plaintiff concedes that Catalina "is in the business of purchasing structured settlements and annuities…." (FAC, ¶ 2.) Publicly available court filings made in connection with structured settlement transfers—of which this Court may take judicial notice—demonstrate that such transactions do not sell, rent, or offer any services for a fee or charge. To the contrary, the buyer incurs all of the expenses of such structured settlements. Consequently, any interaction between Catalina and Plaintiff was not a telephone solicitation, and therefore not actionable under the TCPA as a matter of law.

In accordance with Local Civil Rule 7.1(d), Catalina sought Plaintiff's concurrence in this Motion. Plaintiff's counsel indicated that Plaintiff opposes the relief sought herein.

DATED: June 8, 2021          Respectfully submitted,

                             BLANK ROME LLP


                             By: /s/ Harrison Brown
                                     Harrison Brown
                                     hbrown@blankrome.com
                                     2029 Century Park East, 6th Floor
                                     Los Angeles, CA 90067
                                     Tel.: 424.239.3400
                                     Fax: 424.239.3434
                             Attorneys for Defendant
                             CATALINA STRUCTURED FUNDING, INC.

126106906

BEVERLY ANDERSON,                    CASE NO: 1:21-cv-00197-PLM-SJB
individually and on behalf of all        CLASS ACTION
others similarly situated,

      Plaintiff,                          HON. PAUL L. MALONEY

v.

CATALINA STRUCTURED FUNDING, INC.,

      Defendant.

_____/

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CATALINA STRUCTURED FUNDING, INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

126106906

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION. ..........................................................................................8

II.   RELEVANT BACKGROUND. ...................................................................10

    A.    Plaintiff's Allegations. ......................................................................10

    B.    As a "Transferee" Under Michigan's Structured Settlement Protection Act, Catalina Makes Offers to Purchase—Not Sell—Property. .............11

III.  LEGAL STANDARD. .................................................................................13

IV.  THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. .......................................................................................................15

    A.    Plaintiff's Claims Turn on Whether Catalina Intended to Encourage Plaintiff to Purchase, Rent, or Invest in Property, Goods, or Services. .................15

    B.    Unlike a Traditional Sales Call, An Offer by a Caller to Buy Something From a Called Party Is Not Actionable Under the TCPA. .....................16

    C.    Plaintiff Does Not, and Cannot, Plead Facts Demonstrating That Catalina Attempted to Sell Property, Goods, or Services. ....................................20

V.   CONCLUSION. ...........................................................................................23

126106906

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...................................................13

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
    528 F.3d 426 (6th Cir. 2008) ...............................................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...............................................13, 14

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
    648 F.3d 365 (6th Cir. 2011) ..........................................................................................13, 14

*Edelsberg v. Vroom, Inc.*,
    No. 16-62734, 2018 WL 1509135 (S.D. Fla. Mar. 27, 2018) ...........................................18, 19

*Freyja v. Dun & Bradstreet, Inc.*,
    No. 14-7831, 2015 WL 6163590 (C.D. Cal. Oct. 14, 2015), *appeal dismissed*
    (Feb. 11, 2016) ....................................................................................................................19

*Friedman v. Torchmark Corporation*,
    No. 12-2837, 2013 WL 4102201 (S.D. Cal. Aug. 13, 2013) ................................................18

*Grainger, Jr. v. Cty. of Ottawa*,
    No. 19-501, 2021 WL 790771 (W.D. Mich. Mar. 2, 2021) ..................................................12

*Hulsey v. Peddle, LLC*,
    No. 17-3843, 2017 WL 8180583 (C.D. Cal. Oct. 23, 2017) .................................................19

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of
1991*,
    20 F.C.C. Rcd. 3788 (2005) .................................................................................................17

*Lopez-Lopez v. Cty. of Allegan*,
    321 F. Supp. 3d 794 (W.D. Mich. 2018) .............................................................................14

*Luis v. Zang*,
    833 F.3d 619 (6th Cir. 2016) ...............................................................................................14

*Meadows v. Franklin Collection Serv., Inc.*,
    414 F. App'x 230 (11th Cir. 2011) ......................................................................................19

126106906

*Murphy v. DCI Biologicals Orlando, LLC*,
  No. 12-1459, 2013 WL 6865772 (M.D. Fla. Dec. 31, 2013), *appealed on*
  *other grounds and aff'd*, 797 F.3d 1302 (11th Cir. 2015) ......................................18

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
  650 F.3d 1046 (6th Cir. 2011) ...........................................................................14

*Orea v. Nielsen Audio, Inc.*,
  No. 14-04235, 2015 WL 1885936 (N.D. Cal. Apr. 24, 2015)....................................16, 17, 18

*Reardon v. Uber Techs., Inc.*,
  115 F. Supp. 3d 1090 (N.D. Cal. 2015) ...............................................................19

*Rhodes v. R & L Carriers, Inc.*,
  491 F. App'x 579 (6th Cir. 2012) .......................................................................14

*Scheid v. Fanny Farmer Candy Shops, Inc.*,
  859 F.2d 434 (6th Cir. 1988) ............................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)....................................14

*Trujillo v. Free Energy Sav. Co., LLC*,
  No. 19-02072, 2020 WL 7768722 (C.D. Cal. Dec. 21, 2020).................................19

**Statutes**

26 U.S.C. § 5891..............................................................................................22

47 U.S.C. § 227 *et seq*........................................................................... *passim*

MCL § 691.1301 *et seq*........................................................................12, 20, 21, 22

**Other Authorities**

47 C.F.R. § 64.1200(c)......................................................................................15

47 C.F.R. § 64.1200(d) .....................................................................................15

47 C.F.R. § 64.1200(f)(13) ................................................................................16

47 C.F.R. § 64.1200(f)(15) ................................................................................16

31 Am. Jur. Trials 595 (Apr. 2021 update)................................................................11

Annuity, Black's Law Dictionary (11th ed. 2019).......................................................11

Fed. R. Civ. P. 8(a)(2)......................................................................................13

126106906

Fed. R. Civ. P. 12(b)(6)................................................................................13, 14

Fed. R. Evid. 201 ...........................................................................................13

126106906

# I.     INTRODUCTION.

Plaintiff Beverly Anderson ("Plaintiff") asserts that Defendant Catalina Structured Funding, Inc. ("Catalina") violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by making more than one telephone solicitation call to her despite the fact that her telephone number is on the National Do Not Call ("DNC") Registry.  She also claims that Catalina failed to honor her DNC request.  For her case to continue, Plaintiff must overcome a dispositive threshold issue: that is, she must demonstrate that the calls were "telephone solicitations."

Under the TCPA, a "telephone solicitation" is narrowly defined as a telephone call whose purpose is to encourage the purchase, rental, or investment in property, goods, or services.  In other words, if the caller does not encourage the call recipient to 1) purchase; 2) rent; or 3) invest, the call cannot be a considered a "telephone solicitation."  A call in which the caller attempts to *buy* something from the other party is *not* a "telephone solicitation" under the statutory definition.  Indeed, every court that has examined the issue has concluded that a call which attempts to *buy* something from the other party is not a telephone solicitation because it does not encourage the purchase, rental, or investment in property, goods, or services.

As Plaintiff alleges, Catalina is a structured settlement buyer.  (*See* Dkt. No. 12 (the "FAC"), ¶ 2.)  Catalina buys payments due to payees in the future under structured settlements and annuities for a lump sum.  (*Id.*)  Plaintiff, recognizing the fatal flaw in her case, attempts to categorize the transactions at issue into "solicitations," by asserting that Catalina—the buyer— charges "transactional fees" and charges for "a number of services to effectuate the transaction." (*Id.*, ¶¶ 15-16.)  This position fails for three reasons.

First, as a matter of law, Catalina is not a service provider and sells no services.  Catalina contracts to purchase structured settlement payments at a fixed amount.  This amount is negotiated

at arm's length. The only thing that a seller receives from Catalina is an immediate lump sum payment in exchange for her future payment rights.

Second, Catalina does not charge the seller fees in order to effectuate Catalina's purchase of the structured settlement. The contractually-agreed amount that a seller accepts for her future payments is not reduced by any fee or charge. As discussed herein, this Court can take judicial notice of the fact that Catalina charges no fees since every purchase of a structured settlement by Catalina must be approved by a court.[1]

Third, under a measure of common sense, costs to a buyer to acquire goods does not equate to sellers being charged "effective discount rates." The cost to a buyer is just that: costs to the buyer. Plaintiff is advancing a tortured theory that the fact that Catalina incurs costs means that Catalina is providing a service. This theory is demonstrably false, as seen by reference to matters appropriate for judicial notice, illogical in general, and specifically not workable under the TCPA.

In short, legal definitions under the TCPA, judicially noticeable documents, and common sense dictate that Plaintiff has not alleged a telephone call in which Catalina encouraged the purchase, rental, or investment in any of its products or services. This Court should, respectfully, dismiss Plaintiff's claims with prejudice.

---

[1] Transfers of structured settlements are governed by state law. In order to receive court approval of a transfer, Catalina is required to disclose any fee it charges in connection with the transaction. As demonstrated in publicly-available court filings which the Court may judicially notice, Catalina has *never* charged a fee.

## II.    RELEVANT BACKGROUND.

### A.    Plaintiff's Allegations.

Plaintiff alleges that between February 6, 2021 and February 8, 2021, Catalina called Plaintiff three times at her telephone number ending in 4021.[2]  (Dkt. No. 12 ("FAC"), ¶¶ 20, 22, 24.)  She states, in a conclusory fashion while parroting the language of the TCPA, using generic "and/or" language, and providing no other details about the content of the conversations, that Catalina's purpose in making the calls was "to market and advertise its goods and/or products or services regarding annuities and structured settlements." (*Id.*)  Plaintiff asserts that she answered each call and asked that Catalina stop calling. (*Id.*, ¶¶ 21, 23, 25.)  Plaintiff avers that her telephone number is on the National DNC Registry.  (*Id.*, ¶ 30.)

Based on these alleged facts, Plaintiff brings two causes of action against Catalina under the DNC provisions of the TCPA: the first, for Catalina's purported "refusal to honor opt-out requests" (*id.*, ¶ 54; *see also id.*, ¶¶ 49-58); the second, for purportedly "initiating, or causing to be initiated, telephone solicitations" of more than one during a 12-month period to a person whose telephone number is on the DNC Registry (*id.*, ¶ 64; *see also id.*, ¶¶ 59-66).  She seeks statutory damages of no less than $500 per call and up to $1,500 per call, and injunctive relief.  (*See id.*, ¶¶ 56-58, 65-66.)

Plaintiff desires to represent two nationwide classes.  The first, an "Internal Do Not Call Class," consists of all persons to whom, "within the four years prior to the filing of this Complaint, (1) Defendant or anyone on Defendant's behalf; (2) transmitted a call; (3) <u>where the purpose of the call or text messages was encouraging the purchase or rental of, or investment in, Defendant's</u>

---

[2] Plaintiff alleges, inconsistently, that her phone number is a "cellular telephone number" (*see* FAC, ¶ 20) and "a residential phone number" (*id.*, ¶ 31).

property, goods, or services; (4) to said person's residential telephone number; (5) after the person made a request to Defendant to not receive future communications." (*Id.*, ¶ 38 (emphasis added).) The second, a "Do Not Call Class," consists of all persons to whom, "from four years prior to the filing of this action: (1) Defendant, or anyone on Defendant's behalf, (2) transmitted a call; (3) more than one time within any 12-month period; (4) to a person who's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (5) where the purpose of the call or text messages was the encouraging the purchase or rental of, or investment in, Defendant's property, goods, or services." (*Id.* (emphasis added).)

**B.     As a "Transferee" Under Michigan's Structured Settlement Protection Act, Catalina Makes Offers to Purchase—Not Sell—Property.**

Plaintiff alleges that Catalina made "unsolicited marketing calls." (*Id.*, ¶ 8.) Common sense, state law, and matters appropriate for judicial notice render this allegation invalid, as a matter of law, on its face. As a structured settlement buyer, Catalina sells nothing and provides no "services." Catalina exclusively buys future payments due under structured settlement.

A structured settlement is "[a] settlement in which the defendant agrees to pay periodic sums to the plaintiff for a specified time," rather than through one lump sum payment. SETTLEMENT, Black's Law Dictionary (11th ed. 2019); 31 Am. Jur. Trials 595, at § 2 (Apr. 2021 update) ("[T]he phrase is used most often to denote a settlement which is comprised of a structure of periodic future payments usually administered by an insurance carrier using various forms of insurance policies."). An annuity is "[a]n obligation to pay a stated sum, usu. monthly or annually, to a stated recipient" and is often an insurance product. ANNUITY, Black's Law Dictionary (11th ed. 2019).

From time to time, people entitled to structured settlement payments due in the future may determine that they would prefer to receive an immediate lump sum payment instead of waiting

for the payments to become due over time. When an individual is considering a lump sum, said individual may reach out to or have contact with structured settlement buyers like Catalina. Structured settlement buyers will then make offers to buy some or all of the remaining payments due under the structured settlement annuity.

Nearly every state in the country has a statute in place to govern transactions in which companies like Catalina buy structured settlement payments from individuals. In Michigan, the sales of structured settlement payments are governed by the Structured Settlement Protection Act ("SSPA"), MCL 691.1301 *et seq.* Under the SSPA, a "transfer" is "a sale, assignment, pledge, hypothecation, or other alienation or encumbrance of structured settlement payment rights." MCL § 691.1302(r). A "transferee" is "a ***person acquiring or proposing to acquire*** structured settlement payment rights through a transfer" (emphasis added). MCL § 691.1302(u).

Under state law, each transfer of a structured settlement payment requires a court order concluding that the transfer is in the best interests of the seller. MCL § 691.1306(1). Compliance with such laws is the legal duty of the buyer (transferee) and ensures that the buyer may acquire good title to the structured settlement.

As part of the process, the SSPA requires that a buyer "provide to the payee [seller] a separate disclosure statement … setting forth … [a]n itemized listing of all applicable transfer expenses, other than attorney fees and related disbursements payable in connection with the transferee's application for approval of the transfer, and the transferee's best estimate of the amount of the fees and disbursements." MCL § 691.1303(e). The transferee must provide a copy of the disclosure statement to the court for its review and approval. MCL § 691.1306(2)(c). These filings, including the disclosure statements, are publicly available in the dockets of the Michigan state courts and are judicially noticeable. *See Grainger, Jr. v. Cty. of Ottawa*, No. 19-501, 2021

WL 790771, at *6 (W.D. Mich. Mar. 2, 2021) (Maloney, J.) ("Courts may take 'notice of items in the public record' when considering a motion to dismiss") (citations omitted); *see also* Fed. R. Evid. 201.

Catalina is a transferee under Michigan's SSPA and equivalent laws in other states. (*See* Request for Judicial Notice ("RJN"), ¶ 2, Exs. 1-14.) As seen in judicially noticeable court filings, Catalina does not charge a fee in connection with a purchase of a structured settlement. (*Id.*, ¶ 3, Exs. 15-22.) As the transferee, Catalina exclusively limits its activities to "acquiring or proposing to acquire" structured settlement payments. As to the calls to Plaintiff, they were, by definition and as alleged, solely related to this single activity.

## III.    LEGAL STANDARD.

This Court has summarized the legal standard for a motion to dismiss as follows:

> A complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).
>
> To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955, and the "claim to relief must be plausible on its face" *Id.* at 570, 127 S. Ct. 1955. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted). If the plaintiff does not "nudge[ ] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955.

When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. for Bio-Ethical Reform*, 648 F.3d at 369. The Sixth Circuit has noted that courts "may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). However, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"; rather, "it must assert sufficient facts to provide the defendant with 'fair notice of what the … claim is and the grounds upon which it rests." *Rhodes v. R & L Carriers, Inc.*, 491 F. App'x 579, 582 (6th Cir. 2012) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955).

Generally, the Court can only look to the Complaint on a motion under Rule 12(b)(6). However, limited "other sources," such as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," may be considered. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007); *see Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ) ("In evaluating a motion to dismiss, we 'may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.'").

*Lopez-Lopez v. Cty. of Allegan*, 321 F. Supp. 3d 794, 797-98 (W.D. Mich. 2018) (Maloney, J.).

As discussed herein, Plaintiff's statements that the three calls she received were telephone solicitations are nothing more than conclusory statements that fail to satisfy the recognized pleading standard. As to the other purported "facts" alleged by Plaintiff, judicially noticeable facts, legal definitions and common sense demonstrate that the calls to Plaintiff were made for the purpose of buying or acquiring her structured settlement payment rights, not for the purpose of charging any fees for a service. Other allegations by Plaintiff are merely legal conclusions with no supporting factual allegations about any purported good or service sold by Catalina to consumers—because there are none.

## IV. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

### A. Plaintiff's Claims Turn on Whether Catalina Intended to Encourage Plaintiff to Purchase, Rent, or Invest in Property, Goods, or Services.

Plaintiff alleges a private right of action under Section 227(c)(5) of the TCPA (*see* FAC, ¶¶ 56-58, 65-66), which contains restrictions on "telephone solicitation[s]." 47 U.S.C. § 227(c)(5). Section 227(c)(5) provides a private right of action to those who have received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5). This section further provides, in relevant part, that "[i]t shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection." *Id.*

Section 227(c)(1) authorizes the Federal Communication Commission ("FCC") to promulgate regulations regarding these "telephone solicitations." 47 U.S.C. § 227(c)(1) ("[T]he [FCC] shall initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."). Plaintiff asserts that Catalina failed to comply with such regulations, citing 47 C.F.R. § 64.1200(c) and 47 C.F.R. § 64.1200(d). (*See* FAC, ¶¶ 49-66.)

Section 64.1200(c) prohibits "initiat[ing] any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the national [DNC] registry of persons who do not wish to receive telephone solicitations." Section 64.1200(d) requires those who engage in "telemarketing" to have a written policy, train personnel, and maintain a DNC list.

15

The definitions of a "telephone solicitation" and "telemarketing" are similar. Both terms mean "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *See* 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(15) (defining telephone solicitation) and 47 C.F.R. § 64.1200(f)(13) (defining telemarketing).[3] Thus, <u>liability in this case hinges on whether Catalina's purpose in making the alleged calls was to encourage Plaintiff to purchase, rent, or invest in property, goods, or services.</u>[4] *See Orea v. Nielsen Audio, Inc.*, No. 14-04235, 2015 WL 1885936, at *2 (N.D. Cal. Apr. 24, 2015) ("Plaintiff alleges that Defendant called his residential telephone number, which is registered on the [DNC] list. Thus, Defendant's liability hinges on whether the calls were 'telephone solicitations.'") (internal citation to record omitted).

**B.      Unlike a Traditional Sales Call, An Offer by a Caller to Buy Something From a Called Party Is Not Actionable Under the TCPA.**

Whereas a traditional sales call in which the caller attempts to sell something to the other party could constitute a telephone solicitation or telemarketing, <u>a call in which the caller is attempting to buy something from the other party is not telephone solicitation or telemarketing.</u> In a 2005 order, the FCC cemented this distinction and provided the following example:

---

[3] The only difference between the definitions for a "telephone solicitation" and "telemarketing" is that the definition for telephone solicitation exempts certain types of calls (like calls to persons with whom the caller has an established business relationship).

[4] The class claims hinge on this determination as well. Each of the proposed classes are limited to calls "where the purpose of the call or text messages was the encouraging the purchase or rental of, or investment in, Defendant's property, goods, or services." (FAC, ¶ 38.)

126106906

As with any entity making calls that constitute 'telephone solicitations,' a real estate agent, insurance agent, or newspaper is precluded from calling consumers registered on the national do-not-call list, unless the calls would fall within one of the specific exemptions provided in the statute and rules. Therefore, we clarify that a telephone solicitation would include calls by real estate agents to property owners for the purpose of offering their services to the owner, whether the property listing has lapsed or not. We find, however, that *calls by real estate agents who represent only the potential buyer to someone who has advertised their property for sale, do not constitute telephone solicitations, so long as the purpose of the call is to discuss a potential sale of the property to the represented buyer. The callers, in such circumstances, are not encouraging the called party to purchase, rent or invest in property, as contemplated by the definition of 'telephone solicitation.'* They are instead calling in response to an offer to purchase something from the called party.

*In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788, 3793-94 ¶ 15 (2005) (emphasis added, footnotes omitted). While this appears to be an issue of first impression in the Sixth Circuit, every court that has confronted the issue has held that calls in which the caller attempts to buy or obtain something from the called party are not actionable under the TCPA.

In *Orea*, for example, Nielsen called the plaintiff to conduct a survey. 2015 WL 1885936, at *1. At the pleadings stage and without having to engage in discovery, the court granted Nielsen's motion to dismiss with prejudice because, "under the plain language of the TCPA … [the calls] do not intend to encourage a purchase, rental, or investment in any goods, services, or property. As alleged, they only ask Plaintiff to participate in a TV and radio rating survey." *Id.* at *2 (internal citation omitted). The court rejected the plaintiff's argument "that the calls are telephone solicitations because Defendants called with the intent of buying something from Plaintiff." *Id.*, at *3. As the court explained, "[t]he only sensible reading of the statute is that the 'purchase' of 'property,' 'goods,' or 'services' that is intended by the call is the purchase by the consumer, not by the caller. Any other reading would include absurd results by sweeping into a consumer protection statute prohibitions against a range of ordinary social interactions." *Id.*; *see*

*also id.* ("[T]elephone solicitations are calls intending to encourage a purchase by the listener, not the caller.").

Similarly, in *Friedman v. Torchmark Corporation*, No. 12-2837, 2013 WL 4102201, at *6 (S.D. Cal. Aug. 13, 2013), the court held that a message with an invitation to attend a recruiting webinar to learn about defendant's products to potentially sell to others was not a telephone solicitation. In granting the defendant's motion to dismiss with prejudice, the court reasoned that the call was not aimed at "encouraging *Plaintiff* to engage in future commercial transactions with Defendant to purchase its goods," but at giving plaintiff the equivalent of "an offer of employment"—an offer to purchase plaintiff's labor—which the court concluded was not a telephone solicitation. *Id.* (emphasis added). Likewise, in *Murphy v. DCI Biologicals Orlando, LLC*, No. 12-1459, 2013 WL 6865772 (M.D. Fla. Dec. 31, 2013), *appealed on other grounds and aff'd*, 797 F.3d 1302 (11th Cir. 2015), the court held that messages asking plaintiff to give blood in exchange for cash were not telephone solicitations because they did not encourage the recipient to make a purchase but instead were attempts to make a purchase *from* the recipient: "Because neither of the messages in this case encouraged Murphy to purchase, rent, or invest in anything, they do not constitute 'telephone solicitations.'… On the contrary, one message asked Murphy to sell his blood." Whether the buyer had to pay any fee in the process of purchasing Murphy's blood did not convert the transaction into a "service" and did not factor into the court's decision.

This rule should come as no surprise to Plaintiff's counsel, Manuel and Ignacio Hiraldo, who also represented the plaintiff in *Edelsberg v. Vroom, Inc.*, No. 16-62734, 2018 WL 1509135 (S.D. Fla. Mar. 27, 2018). In *Edelsberg*, an online car retailer which buys and sells vehicles sent a text message to the plaintiff which stated: "Hi Mark, I am Scott at Vroom. I saw you listed your Prius online & can make an offer but need you to fill out a few more details (takes 4 min)

18

http://go.vroom.com/syc/6C9179. Text STOP to Quit." *Id.* at \*2. The court noted that "[a] plain reading of the text message … indicates that Vroom sought to purchase the advertised vehicle," rather than to sell a vehicle. *Id.* at \*5. Accordingly, the court "conclude[d] that Vroom's text message to Edelsberg was plainly not telemarketing." *Id.* at \*7; *see also Hulsey v. Peddle, LLC*, No. 17-3843, 2017 WL 8180583, at \*3 (C.D. Cal. Oct. 23, 2017) (dismissing complaint where the plaintiff's allegations about a text message offer to purchase a car "do not support the reasonable inference that the texts from Peddle were initiated to sell products or encourage future purchases").

These are just a few of many examples arriving at the same result. *See, e.g.*, *Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230 (11th Cir. 2011) ("We reject Meadows's invitation to stretch and distort the meaning of 'telephone solicitation.' It is undisputed that Franklin did not try to sell anything to Meadows, and did not offer to provide her any services."); *Freyja v. Dun & Bradstreet, Inc.*, No. 14-7831, 2015 WL 6163590, at \*2 (C.D. Cal. Oct. 14, 2015), *appeal dismissed* (Feb. 11, 2016) (granting the defendant's motion for summary judgment where "the call was made for the purpose of acquiring information about the commercial services provided by Plaintiff and not to market to Plaintiff or to sell her anything" because "[t]he regulation bans calls to sell property, goods, or services, not calls to acquire information"); *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015) (holding that "texts from Uber seeking to recruit drivers were not attempts to promote a 'good' (its application) to those drivers, but instead was an attempt to recruit drivers so that those potential drivers could provide services to riders…. Accordingly, the Court finds that, given the allegations in the complaint, the texts at issue do not contain advertisements and do not constitute telemarketing."); *Trujillo v. Free Energy Sav. Co., LLC*, No. 19-02072, 2020 WL 7768722 (C.D. Cal. Dec. 21, 2020) (granting summary

judgment in favor of defendant against telephone solicitation claims where "Defendant cannot receive payment from the consumers it contacts").

As such, <u>Plaintiff must demonstrate that Catalina's purpose in making the calls was to sell something to Plaintiff, rather than buy something from Plaintiff</u>.  She has not done that.  In fact, she has affirmatively pled that Catalina **buys** structured settlement payment rights and that Catalina merely incurs fees in doing so (as must most buyers).  The judicially-noticed filings demonstrate that these fees are not invoiced to sellers of structured settlement payment rights.

### C.    Plaintiff Does Not, and Cannot, Plead Facts Demonstrating That Catalina Attempted to Sell Property, Goods, or Services.

As stated, judicially noticeable facts and legal inferences made from the allegations establish that Catalina is a transferee under state law (RJN, ¶ 2, Exs. 1-14), which by definition means that Catalina "acquir[es] or propos[es] to acquire structured settlement payment rights through a transfer."  MCL § 691.1302(u).  Selling is not part of Catalina's statutorily-defined business practices.  Nor do the applicable statutes and court documents demonstrate that Catalina is a service provider simply because Catalina incurs fees to legalize the transfer in court.  Because Catalina does not charge for any services, or offer such services to sellers in any event (the seller is not required to legalize any transfer—only the transferee has that obligation), Plaintiff's theory of liability is futile and fails as a matter of law.

Plaintiff makes generalized and conclusory allegations about the structured settlement industry which, aside from being incorrect, have nothing to do with Catalina's call in the first instance.  Plaintiff alleges that Catalina "generates revenue by purchasing the structured settlements at a discounted rate and by charging consumers various transactional fees including legal fees, court fees, broker commission, insurance company payments, administrative fees and/or processing fees."  (FAC, ¶ 15.)  According to Plaintiff, "[a] structured settlement company, *such*

*as Defendant*,[5] charges annuitants fees to perform a number of services to effectuate the transaction, including fees for: (i) processing the payee's application; (ii) computing the present value of the structured settlement; (iii) complying with underwriting requirements; (iv) preparing and processing the contract; (v) complying with applicable disclosure laws and other laws pertaining to court approval; and (vi) filing all necessary legal documents to obtain court approval of the transaction." (*Id.*, ¶ 16 (emphasis added).)

This is wrong as a matter of law. As discussed, a transferee like Catalina is required to publicly disclose all fees. *See* MCL §§ 691.1303(e) & 691.1306(2)(c). As judicially noticeable court filings demonstrate, Catalina has never charged a fee in connection with the transfer of a structured settlement. (RJN, ¶ 3, Exs. 15-22.)

Not only does Catalina not charge any "fees" to complete a structured settlement transaction (because it is not a service provider as a matter of law), but the so-called "fees" which Plaintiff references in Paragraph 16 of her FAC are, as they should be, *incurred only by Catalina*, the buyer, and not the seller of the structured settlement:

> (i) There is no fee for "processing the payee's application" because the payee does not make an application. It is the transferee who petitions the court for approval. *See* MCL § 691.1306(1) ("The transferee may apply for approval of a transfer of structured settlement payment rights…."); *see also* MCL § 691.1306(2) ("[T]he transferee shall file with the court and serve on all interested parties a notice of the proposed transfer and the application for its authorization….").

---

[5] Plaintiff does not allege that Catalina itself charges any of these fees. She alleges only that "structured settlement company[ies]" generally charge fees.

(ii)    The phone call to Plaintiff has nothing to do with offering a service related to "computing the present value" in the context of structured settlements and annuities. Annuity computations are again statutorily defined, and the law recognizes the present value of future payments by discounting the payments to the present using the most recently published applicable federal rate for determining the present value of an annuity, as issued by the Internal Revenue Service. MCL § 691.1302(c).[6]

(iii)    There is no fee for "complying with underwriting requirements." Underwriting requirements in structured settlement transactions exist for the buyer's benefit, so that the buyer can weigh the risks of the transaction (e.g., determining whether the obligor of a long-term structured settlement is likely to remain financially solvent over the life of the debt). The buyer may waive underwriting, if it so desires. Underwriting is not a service charged to a seller.

(iv)    The seller is not charged to "prepar[e] and process[ ] the contract." Again, under Michigan's SSPA, the transferee is the party who is obligated to submit the application and "prepar[e] and process[ ] the contract." *See* MCL §§ 691.1303(1) & 691.1306(2).

(v)    There is no fee charged to a sekker for "complying with applicable disclosure laws and other laws pertaining to court approval." The law exists for the benefit of the transferee. A transferee who acquires a structured settlement not in compliance with state law is subject to an excise tax of 40% under 26 U.S.C. § 5891.

(vi)    For the same reason, "filing all necessary legal documents to obtain court approval of the transaction" is, again, both the transferee's burden and for its own benefit.

Plaintiff's generalized allegations are clever, but do not pass the plausible threshold under the TCPA and other relevant statutes incorporated by reference into the FAC. Plaintiff's legal arguments, couched in the form of factual allegations, are misleading and demonstrate a misunderstanding of how the structured settlement transactions functions, both as a matter of law and with the duly required measure of common sense. There are no fees which Catalina could charge to Plaintiff and no services which Catalina could encourage Plaintiff to purchase. That

---

[6] By way of analogy, a potential purchaser of real estate may provide a letter from her bank showing that she is pre-approved for a mortgage. The pre-approval letter discloses the terms set by the buyer's bank so that the seller can make an informed decision about whether to complete the transaction. It is not a service for which the buyer can charge the seller.

Catalina has acquired structured settlements (FAC, ¶ 17), places calls to offer to buy structured settlements (*id.*, ¶ 18), and has staff which re-sell structured settlements to other investors (*id.*, ¶ 19) does not change the analysis. **Catalina is not a service provider merely because it incurs business expenses as it must to effectuate the transactions**. The fact remains that there is no plausible inference which suggests that Catalina, in a call to Plaintiff to purchase Plaintiff's structured settlement, attempted to do anything other than buy a structured settlement from Plaintiff. As such, Plaintiff's claims must be dismissed with prejudice.

## V.     CONCLUSION.

For the foregoing reasons, Catalina respectfully requests that the Court dismiss this action with prejudice.


DATED: June 8, 2021                    Respectfully submitted,

                                       BLANK ROME LLP


                                       By: /s/ Harrison Brown
                                            Harrison Brown
                                            hbrown@blankrome.com
                                            2029 Century Park East, 6th Floor
                                            Los Angeles, CA 90067
                                            Tel.: 424.239.3400
                                            Fax: 424.239.3434
                                       Attorneys for Defendant
                                       CATALINA STRUCTURED FUNDING, INC.

126106906

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Local Civil Rule 7.1(b)(ii). The total word count of the Memorandum is 5,227. The total word count was generated by Microsoft Word for Office. Pursuant to Local Civil Rule 7.3(b)(i), the total word count does not include the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits.

DATED: June 8, 2021        Respectfully submitted,

BLANK ROME LLP

By: /s/ Harrison Brown
     Harrison Brown
     hbrown@blankrome.com
     2029 Century Park East, 6th Floor
     Los Angeles, CA 90067
     Tel.: 424.239.3400
     Fax: 424.239.3434
Attorneys for Defendant
CATALINA STRUCTURED FUNDING, INC.

126106906

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 8, 2021, I caused the foregoing papers to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys or parties of record.

By: /s/ Harrison Brown
       Harrison Brown

126106906