**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BEVERLY ANDERSON,                                   CASE NO**:**  1:21-cv-00197-PLM-SJB
individually and on behalf of all                   CLASS ACTION
others similarly situated,

      Plaintiff,                                    HON. PAUL L. MALONEY

v.

CATALINA STRUCTURED FUNDING, INC.,

      Defendant.

_____/


## REPLY IN SUPPORT OF DEFENDANT CATALINA STRUCTURED FUNDING, INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION. ...................................................................................................1

II.  ARGUMENT. .......................................................................................................2

    A.   The Court Should Not Consider Facts That Contradict the FAC. .........................2

    B.   Catalina Cannot Simultaneously Factor a Structured Settlement and Make a Loan Against the Structured Settlement. ...............................................3

    C.   Plaintiff's Catch-All Arguments Are Unavailing. ...................................7

III. CONCLUSION....................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*321 Henderson Receivables Origination LLC v. Sioteco*,
173 Cal. App. 4th 1059 (2009) ....................................................................4, 5, 6

*Buja v. Novation Cap., LLC*,
No. 15-81002, 2017 WL 10398957 (S.D. Fla. Mar. 31, 2017)..........................9, 10

*Degolia v. Kenton Cty.*,
381 F. Supp. 3d 740 (E.D. Ky. 2019), *reconsideration denied*, No. 17-226,
2019 WL 12105661 (E.D. Ky. June 18, 2019) ........................................................2

*New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*,
336 F.3d 495 (6th Cir. 2003) ...............................................................................11

*Rouse v. Caruso*,
No. 6-10961, 2011 WL 918327 (E.D. Mich. Feb. 18, 2011)...................................2

*Savett v. Anthem, Inc.*,
No. 18-274, 2019 WL 5696973 (N.D. Ohio Nov. 4, 2019)...................................10

*Williams v. United Steel Workers of Am.*,
No. 09-743, 2010 WL 909883 (S.D. Ohio Mar. 10, 2010)......................................3

**Statutes**

47 C.F.R. § 64.1200(f)(15) .....................................................................................4
47 U.S.C. § 227(a)(4) ............................................................................................4
Cal. Ins. Code § 10134(d) .....................................................................................6
Cal. Ins. Code § 10136 (b) ....................................................................................6
Fla. Stat. § 626.99296 ...........................................................................................7
Fla. Stat. § 626.99296(3)(a)(2)(g) ........................................................................6
MCL § 691.1302(c) ...............................................................................................5
Model Structured Settlement Protection Act .........................................................4
SSTA.....................................................................................................................5

**Other Authorities**

Hindert, D & Ulman, C, *Transfers of Structured Settlement Payment Rights: What
Judges Should Know About Structured Settlement Protection Acts* No. 2 ..............4

126386814

# I.      INTRODUCTION.[1]

In her Response in Opposition (Dkt. No. 22, the "Opposition"), Plaintiff concedes that liability in this case hinges on whether Catalina's purpose in making the alleged calls was to encourage Plaintiff to purchase, rent, or invest in property, goods, or services.  (Opp., p. 10.)  The parties merely dispute whether the answer to this threshold legal question can be determined on the pleadings alone.  It can.

The Opposition raises two theories of liability, both of which fail.  First, Plaintiff charges that Catalina is a "factoring company that 'purchases' structured settlements."  (*Id.*, p. 2.)  Second, Plaintiff thinks that Catalina "is [a] lender and sells loan products and related services."  (*Id.*, p. 4.)  Setting aside that Plaintiff does not actually plead any of this in her FAC, the two theories are inconsistent.  By definition, a factor buys an account receivable.  A lender, on the other hand, loans something to be repaid at a future date.  A factor becomes the owner of the asset sold by the seller, whereas a borrower keeps her asset.  Plaintiff cannot have it both ways.  Either Catalina factors structured settlements—in which case Plaintiff's claim fails as a matter of law because Catalina's call to Plaintiff would not be a telephone solicitation by definition—or Catalina makes loans with structured settlements as collateral.  There is no support for the latter theory in the FAC or the Opposition.  And even if it was so pled, it would fail for want of plausibility.

In particular, either because she misunderstands the statutory schemes governing structured settlement purchases or because Plaintiff desires to mislead the Court, Plaintiff asserts that Catalina offers "services in the form [of] high interest rate charges."  (*Id.*, p. 3.)  As seen in the very documents of which Plaintiff asks the Court to take judicial notice, what Plaintiff characterizes as

---

[1] Except as stated herein, all capitalized terms carry the same meaning assigned in the Motion to Dismiss First Amended Class Action Complaint (Dkt. No. 14).

"interest rates" are actually "effective equivalent" interest rates or "effective annual" interest rates. State legislatures ask structured settlement transferees to provide these values as a frame of reference, so that payees can better understand the sale in relation to the present value of the payee's structured settlement. No interest is actually charged because no money is loaned.

The Court should, respectfully, dismiss this action with prejudice.

## II.    ARGUMENT.

### A.    The Court Should Not Consider Facts That Contradict the FAC.

In the FAC, Plaintiff alleged that Catalina tried to get Plaintiff to pay fees for certain services:

> Defendant's calls constitute telemarketing/advertising because they promote Defendant's structured settlement products and related services. Specifically, Defendant was attempting to solicit business from Plaintiff for the purpose of promoting and encouraging Plaintiff to invest time and money in Defendant's structured settlement products and related services for which Defendant would have charged Plaintiff various fees in the form of an effective discounted rate, including, but not limited to, fees related to (i) processing the Plaintiff's application; (ii) computing the present value of the structured settlement; (iii) complying with underwriting requirements; (iv) preparing and processing the contract; (v) complying with applicable disclosure laws and other laws pertaining to court approval; and (vi) filing all necessary legal documents to obtain court approval of the transaction.

(FAC, ¶ 27.)

Plaintiff's theories of liability changed once she saw the Motion to Dismiss, wherein Catalina explained why each of the six so-called "fees" for services which Plaintiff references are, as they should be, *incurred only by Catalina*, the buyer, and not the seller of the structured settlement. (*See* Mot., pp. 21-22.) Plaintiff made no attempt to rebut these arguments in her Opposition.[2] Instead, the Opposition makes conflicting contentions that Catalina factors structured

---

[2] And, in so failing to rebut Catalina's arguments, Plaintiff concedes them. *See Degolia v. Kenton Cty.*, 381 F. Supp. 3d 740, 759-60 (E.D. Ky. 2019), *reconsideration denied*, No. 17-226, 2019 WL 12105661 (E.D. Ky. June 18, 2019) (quoting *Rouse v. Caruso*, No. 6-10961, 2011 WL 918327, at

settlements and that Catalina makes loans against structured settlements, neither of which are alleged in the FAC. "[T]he Court cannot consider factual allegations which [Plaintiff] states in [her] brief but did not plead in the Amended Complaint." *Williams v. United Steel Workers of Am.*, No. 09-743, 2010 WL 909883, at *4 (S.D. Ohio Mar. 10, 2010). Moreover, and as discussed herein, Plaintiff's new contentions do not support TCPA liability.

**B.** **Catalina Cannot Simultaneously Factor a Structured Settlement and Make a Loan Against the Structured Settlement.**

The two contentions raised by Plaintiff in her Opposition—that "Defendant is [a] factoring company that 'purchases' structured settlements" (Opp., p. 2) and that "Defendant is lender and sells loan products and related services" (Opp., p. 4)—are logically inconsistent. "Factoring" is "[t]he buying of accounts receivable at a discount. The price is discounted because the factor (who buys them) assumes the risk of delay in collection and loss on the accounts receivable." FACTORING, Black's Law Dictionary (11th ed. 2019) (emphasis added). To "lend," on the other hand, is "[t]o allow the temporary use of (something), sometimes in exchange for compensation, on condition that the thing or its equivalent be returned." LEND, Black's Law Dictionary (11th ed. 2019) (emphasis added). Either Catalina factors a structured settlement, meaning Catalina becomes the owner of the asset, or Catalina makes a loan, with the settlement serving as collateral against the owner's default.

As to the former, Plaintiff is correct that Catalina is a factor. By definition, Catalina attempted to *acquire* something from Plaintiff—i.e., her structured settlement—rather than sell

---

*18 (E.D. Mich. Feb. 18, 2011) ("As a practical matter, 'it is well understood ... that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'")).

something to Plaintiff. "Factoring companies deal with people who receive structured settlements." *See, e.g.*, *321 Henderson Receivables Origination LLC v. Sioteco*, 173 Cal. App. 4th 1059, 1064 (2009). A payee will "sell some or all of their future payments to factoring companies for an immediate cash payment. Thus, a factoring transaction partially or fully destroys the 'structured' aspect of a structured settlement because it permits the payee to convert some or all of the periodic payments into a lump-sum payment." *Id.* at 1065. Because any proposed transaction between Catalina and Plaintiff would have involved Catalina's purchase of Plaintiff's structured settlement, the call was not, and could not have been, "a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services…" 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15).

As for Plaintiff's second theory, Catalina is clearly and unequivocally not making loans. Plaintiff's argument does not even meet a superficial level of plausibility. Plaintiff misconstrues the disclosure statements (or intentionally attempts to generate confusion to overcome her defective cause of action) by contending that Catalina offers "services in the form high interest rate charges" (Opp., p. 3) and that Catalina "charges consumers for the loan products and services it provides, either directly or through discounted rates" (*id.*, p. 2). Neither of these propositions are supported.

Although they are not uniform, each state's structured settlement protection act ("SSPA") is derived from the same model legislation, and reflects the same basic legislative scheme. *See* Hindert, D & Ulman, C, *Transfers of Structured Settlement Payment Rights: What Judges Should Know About Structured Settlement Protection Acts*, 44 No. 2 Judges' J. 19, 20 (citing the Model Structured Settlement Protection Act). The transferee—that is, the entity acquiring the structured settlement—is required to make a series of disclosures designed to highlight the value of

126386814

transferred payments and to contrast that value with the net amount that a payee stands to receive in exchange for the transferred payments. *Id.* In many states, as in Michigan under its SSPA, the transferee must disclose the discounted present value of the transferred payments, as determined by using the applicable federal rate published by the Internal Revenue Service ("IRS") for purposes of valuing annuities. *See, e.g.*, MCL § 691.1302(c) ("'Discounted present value' means the present value of future payments determined by discounting the payments to the present using the most recently published applicable federal rate for determining the present value of an annuity, as issued by the internal revenue service.").

The transactions are *not* loans. For example, in California—whose Structured Settlement Transfer Act ("SSTA") Plaintiff indirectly referred to in her Request for Judicial Notice (Dkt. No. 22)—an appellate court *expressly rejected* this argument. In *321 Henderson Receivables*, a subsidiary of J.G. Wentworth appealed a trial court order denying its petition for approval of the transfer of structured settlement payments, after the trial court found that the transfers were loans secured by assignment of the payments, rather than a sale of an annuity, and would violate the prohibition on usury found in California's Constitution. 173 Cal. App. 4th at 1076. The Court of Appeal reversed the trial court's order, holding that "***the transfer of structured settlement payment rights*** under the SSTA ***is not a loan*** secured by assignment of periodic payments ***but is a sale*** of certain rights to receive periodic payments." *Id.* at 1077 (emphasis added).

To help payees better understand if a transferee's offer is fair, some states' SSPAs require that the transferees show these values *as if* they were loans. For example, in California, purchasers must compute the "*effective equivalent* interest rate" which, "with respect to a transfer of structured settlement payment rights, means the annualized rate of interest on the net advance amount, calculated *by treating the transferred structured settlement payments <u>as if they were</u> installment*

*payments on a loan*, with each payment applied first to accrued unpaid interest and then to principal." Cal. Ins. Code § 10134(d) (emphasis added). In Florida, purchasers must compute the "*effective* annual interest rate" and "disclose[ it] in the following statement: 'Based on the net amount that you will receive from us and the amounts and timing of the structured settlement payments that you are turning over to us, *you will, <u>in effect</u>, be paying interest to us at a rate of …. percent per year*.'" Fla. Stat. § 626.99296(3)(a)(2)(g) (emphasis added).

The purpose of this, as the court in *321 Henderson Receivables* observed, is to provide "a <u>hypothetical</u> for comparison purposes." 173 Cal. App. 4th at 1076 (emphasis added). Accordingly, the California statute "requires the following disclosure to payees: 'If you did not sell your right to receive structured settlement payments, but instead borrowed the net amount of $____ and paid that loan back in installments with each of the payments you are now selling, the equivalent interest rate you would be paying for that loan would be ____% per year.'" *Id.* (quoting Cal. Ins. Code § 10136 (b)).

Plaintiff identifies seven transfer disclosures which she contends demonstrate that Catalina is a lender that charges interest. (Opp., pp. 3-4.) Reading these transfer disclosures in full, rather than just the cherry-picked portions excerpted by Plaintiff in her brief, tells a different story. They confirm that each transaction is a *purchase* transaction and that Catalina is not making a loan, but is alternatively presenting the transactions *as if they were* loans so that the payee can better understand if the transaction is fair. For example, in the California form disclosure, Catalina advises:

126386814

> 8    Effective Equivalent Interest Rate. YOU WILL BE PAYING THE
> EQUIVALENT OF AN INTEREST RATE OF 16.252% PER YEAR.
>
> Based on the net amount that You will receive from Us and the amounts and
> timing of the structured settlement payments that You are transferring to Us, if the
> transferred structured settlement payments were installment payments on a loan, with
> each payment applied first to accrued unpaid interest and then to principal, it would be as
> if You were paying interest to Us of 16.252% per year, assuming funding on the effective
> date of transfer.
>
> If you did not sell your right to receive structured settlement payments, but
> instead borrowed the net amount of $27,121.49 and paid that loan back, in installments
> with each of the payments you are now selling, the equivalent interest rate you would
> be paying for that loan would be 16.252% per year.

(Dkt. No. 22-2, p. 20 (highlights added); *see also id.*, p. 51 (same).)  Likewise, the Florida form disclosures under Fla. Stat. § 626.99296 do not say that Catalina is a lender or that Catalina is charging interest for a loan.  Instead, they advise the payee of the *effective* interest rate if the payee obtained a loan.  (*See* Dkt. No. 22-2, pp. 83-84, 110-11, 138, 165, 188-89.)

The FAC confirms that Catalina is not a lender.  Catalina does not make loans, and does not charge interest.  Catalina is a factor which buys structured settlements.  And, by omitting important context surrounding the language that Plaintiff quoted in her Opposition, Plaintiff contorts a consumer-friendly disclosure, designed to provide a payee with information necessary to make an informed choice about a proposed sale, and characterizes it as an indictment about predatory lending.  There is simply no support for Plaintiff's allegation that Catalina is a lender, whether in her FAC, the publicly-filed disclosures which she provided, or the statutory schemes.

### C.    Plaintiff's Catch-All Arguments Are Unavailing.

In a last ditch-effort to save her case, Plaintiff makes three catch-all arguments.  Each is less effective than the last.

First, Plaintiff argues that Catalina "was [e]ngaged in [t]elephone [s]olicitations in [v]iolation of the TCPA" because Catalina's offers are really just pretext for the charging of fees

and sale of services. (Opp., p. 10.) According to Plaintiff, Catalina "was engaged in telephone solicitations because the ultimate purpose of its calls was to encourage Plaintiff and the Class members to invest money and time in Defendant's structured-settlement acquisition services and products." (*Id.*, p. 11.) In support of this argument, Plaintiff regurgitates that same laundry list of "services" that appear in her FAC. (*Id.*) However, as discussed, Plaintiff conceded Catalina's argument that these are actually expenses *incurred by Catalina*. (*See supra*, § II.A & n.2.)

More generally, there is no support for the idea that Catalina charges a fee. Even transfer disclosures provided **by Plaintiff** confirm that Catalina does not charge any fee when it purchases these structured settlements. For example, each California disclosure includes an itemized list of all expenses, totaling $0.00:

> 2    Payments Sold. The amounts and due dates of the structured settlement payments to be transferred are as follows:
>
> One lump sum payment of $43,327.00 due August 10, 2020
>
> 3    Aggregate Amount of Payments to be Transferred.
>
> You have agreed to sell to the transferee future payments totaling Forty-Three Thousand Three Hundred Twenty-Seven and 00/100 dollars ($43,327.00).
>
> 4    Expenses. The aggregate amount of all expenses, if any, to be deducted from the purchase price paid to you in exchange for the payments to be transferred are $0.00. An itemized list of these expenses are:
>
> 5    Net Purchase Price. The net amount paid to You, net of all expenses, in exchange for the payments to be transferred is $27,121.49.
>
> You have agreed to sell to the transferee future payments totaling Forty-Three Thousand Three Hundred Twenty-Seven and 00/100 dollars ($43,327.00) in exchange for the purchase price of Twenty-Seven Thousand One Hundred Twenty-One 49/100 dollars ($27,121.49).

(Dkt. No. 22-2, p. 19[3]; *see also id.*, p. 50.)  Likewise, the total amount "charged" by Catalina in

each Florida disclosure is $0.00:

> **E. The following is an itemized list of all brokers' commissions, service charges, application fees, processing fees, closing costs, filing fees, administrative fees, legal fees, notary fees and other commissions, fees, costs, expenses, and charges payable by the Payee or deductible from the gross amount otherwise payable to the Payee are:**
>
> **$0.00;**

(*Id.*, p. 83; *see also id.*, pp. 110, 137, 164, 188 (same).)

For Plaintiff's "pretext" catch-all argument to be persuasive, Plaintiff has to show that the

call by Catalina was to try to sell an actual, real product or service offered by Catalina to consumers

*after* the actual present subject of the call.  But, Plaintiff does not allege that the calls by Catalina

were "pretext" to selling a product or service.  Rather, Plaintiff alleges that Catalina attempted to

directly "advertise its goods and/or products or services regarding annuities and structured

settlements" during the calls themselves.  (FAC, ¶ 20; *see also id.*, ¶¶ 22 & 24 ("Defendant called

Plaintiff again to market and advertise its goods and/or products or services"); *id.*, ¶ 27

("Defendant's calls constitute telemarketing/advertising because they promote Defendant's

structured settlement products and related services.").)  According to the FAC, Catalina did not

make a "bait and switch;" instead, Plaintiff claims Catalina tried to solicit Plaintiff then and there.

Plaintiff relies on *Buja v. Novation Cap., LLC*, No. 15-81002, 2017 WL 10398957 (S.D.

Fla. Mar. 31, 2017), an out-of-Circuit decision which she claims is based on an "almost identical"

---

[3] The language in the documents submitted by Plaintiff further confirms that these transactions are not loans.  Terms like "the amounts and due dates of the structured settlements to be transferred," the "Net Purchase Price," and "You have agreed to sell to [Catalina]" all show that Catalina is buying the structured settlement payments and not providing any loan to individuals.

set of facts. (Opp., p. 10.) Plaintiff is wrong, and her reliance on *Buja* is misplaced. In granting plaintiff leave to amend, the court in *Buja* referenced "Defendants' Sales Manual" which showed that the defendants *actually* charged fees in connection with structured settlements. *Id.* at *7. In contrast, both Catalina and Plaintiff have identified publicly-available and statutorily-mandated court filings which demonstrate that Catalina has never charged a fee in connection with Catalina's purchase of a structured settlement. (*See* Dkt. No. 16; *see also* Dkt. No. 22.)

Second, and relatedly, Plaintiff argues that the "calls constitute so-called 'dual purpose' calls – calls that appear as non-solicitations on their face, but are ultimately devised to market products and services to consumers." (Opp., p. 13.) This section of Plaintiff's brief is long on case law but short on application of that case law to the facts alleged. After spending nearly six pages discussing various out-of-Circuit cases, Plaintiff finally gets to the point and makes an argument that is effectively the same as the pretext argument that Plaintiff made earlier in her brief: "While Defendant attempts to characterize its calls as innocent offers to purchase something, they were in reality solicitations intended to sell Defendant's loan products and related services." (*Id.*, p. 18.) Again, nothing in Plaintiff's pleading, the documents of which Plaintiff asked the Court to take judicial notice in connection with her Opposition, or the statutory schemes suggests that Catalina is a lender who sells loans. Moreover, "dual-purpose" for telemarketing under the TCPA requires one part information, second part selling. *See Savett v. Anthem, Inc.*, No. 18-274, 2019 WL 5696973, at *7 (N.D. Ohio Nov. 4, 2019) (holding that calls by Anthem about flu shots "were not dual-purpose, thinly veiled enticements to purchase a product or spend further money on Anthem's services. Indeed, Anthem was not asking the member to purchase a product from Anthem at the time of the call or at any time in the future. Instead, Anthem was informing the called consumers about the benefits of receiving the vaccination. Such informational messages

126386814

are exempt from the TCPA….").  There are no two parts alleged by Plaintiff in the FAC.  Nor could there be, since there are no other products or services that Catalina could sell to plaintiff after purchasing her annuity payments.

Finally, Plaintiff argues that Catalina's citation to public filings has raised "nothing more than a factual dispute not appropriate on a motion to dismiss."  (Opp., pp. 8-9.)  Plaintiff ignores that this Court has already ruled that it may "take judicial notice of public court records in deciding a motion to dismiss without having to convert it into a motion for summary judgment."  (Dkt. No. 20, p. 2 n.1 (citing *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)).)  Catalina has demonstrated, through judicially-noticeable public filings, that Catalina only purchases structured settlements and has never charged a fee to complete the purchase of a structured settlement.  These are appropriate for consideration at the pleading stage.  Plaintiff could have rebutted Catalina's argument by reference to public filings which show that Catalina does not merely purchase structured settlements or that Catalina in fact does charge fees.  Instead, Plaintiff presented documents which only confirm Catalina's point.[4]

## III.    CONCLUSION.

Plaintiff's claims fail as a matter of law.  Catalina's business practices are regulated by statute, and public filings made pursuant to the statutory schemes demonstrate that it does not make the loans which Plaintiff thinks Catalina makes and does not charge the fees which Plaintiff thinks Catalina charges.  Because there is no conceivable basis upon which to state a claim, the Court should, respectfully, dismiss this case with prejudice.

---

[4] In any event, the argument that there exists a "factual dispute" is groundless.  Plaintiff does not actually identify the "factual dispute."  Nor does Plaintiff say what discovery may reveal on these subjects, or how it will help her claims.

DATED:  July 20, 2021   Respectfully submitted,

         BLANK ROME LLP


         By: /s/ *Harrison Brown*
           Harrison Brown
           hbrown@blankrome.com
           2029 Century Park East, 6th Floor
           Los Angeles, CA 90067
           Tel.:  424.239.3400
           Fax:  424.239.3434
         Attorneys for Defendant
         CATALINA STRUCTURED FUNDING, INC.

## CERTIFICATE OF COMPLIANCE

The total word count of this reply brief is 3,176. The total word count was generated by Microsoft Word for Office. This word count does not include the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits.

DATED: July 20, 2021         Respectfully submitted,

BLANK ROME LLP

By: /s/ *Harrison Brown*
      Harrison Brown
      hbrown@blankrome.com
      2029 Century Park East, 6th Floor
      Los Angeles, CA 90067
      Tel.: 424.239.3400
      Fax: 424.239.3434
Attorneys for Defendant
CATALINA STRUCTURED FUNDING, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2021, I caused the foregoing papers to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys or parties of record.

By: /s/ *Harrison Brown*
Harrison Brown