# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BEVERLY ANDERSON,  
individually and on behalf of all  
others similarly situated,

    Plaintiff,

v.

CATALINA STRUCTURED FUNDING, INC.,

    Defendant.

_____/

CASE NO**:** 1:21-cv-00197-PLM-SJB

CLASS ACTION

HON. PAUL L. MALONEY

## NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF DEFENDANT CATALINA STRUCTURED FUNDING, INC.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

Defendant Catalina Structured Funding, Inc. ("Catalina") hereby submits as supplemental authority in support of its Motion to Dismiss the First Amended Class Action Complaint (Dkt. No. 14) the recent opinion in *Gross v. GG Homes, Inc.*, No. 21-00271, 2021 WL 2863623 (S.D. Cal. July 8, 2021), a copy of which is attached hereto as **Exhibit A**.

In *Gross*, the plaintiff alleged that a real estate firm sent the following text message eight times: "Hi Kimberly, it's Eric with GG Homes. Do you know of any off-market deals or pocket listing [sic] not yet on MLS? We're looking for fixers in San Diego. Budget is up to $600K. You can TRIPLE END any off market deal you bring us!" *Id.*, 2021 WL 2863623, at *1. Observing that "the communication at the core of the dispute is targeted at procuring services from Plaintiff," the court held that "the texts at issue do not fall within the definition of telephone solicitation under the TCPA," granted the real estate firm's motion to dismiss, and dismissed the plaintiff's causes of action under 47 U.S.C. § 227(c) with prejudice. *Id.* at *8.

DATED: July 27, 2021

Respectfully submitted,

BLANK ROME LLP

By: /s/ *Harrison Brown*
    Harrison Brown
    hbrown@blankrome.com
    2029 Century Park East, 6th Floor
    Los Angeles, CA 90067
    Tel.: 424.239.3400
    Fax: 424.239.3434
Attorneys for Defendant
CATALINA STRUCTURED FUNDING, INC.

# EXHIBIT A

2021 WL 2863623
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

Kimberly GROSS, Plaintiff,
v.
GG HOMES, INC., Defendant.

Case No. 3:21-cv-00271-DMS-BGS
|
Signed 07/08/2021

**Attorneys and Law Firms**

Kimberly Gross, Carlsbad, CA, Pro Se.

Kristin Emily Haule, Manatt, Phelps & Phillips, Los Angeles, CA, for Defendant.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE

Dana M. Sabraw, United States Chief District Judge

 *1 Pending before the Court is Defendant GG Homes, Inc.'s motion to dismiss and/or strike Plaintiff Kimberly Gross' First Amended Complaint. Plaintiff filed an opposition to the motion, and Defendant filed a reply. For the reasons discussed below, the motion to dismiss is granted in part and denied in part, and the motion to strike is denied.

### I.

### BACKGROUND

#### A. Procedural History

On February 16, 2021, Plaintiff filed her Complaint alleging various violations of the Telephone Consumer Protection Act ("TCPA"). (ECF No. 1.) Defendant filed a motion to dismiss and/or strike the Complaint on March 10, 2021. (ECF No. 3.) On March 29, 2021, Plaintiff filed her First Amended Complaint ("FAC"). (ECF No. 4.) The FAC alleged the same TCPA violations as the Complaint. (*Compare* ECF No. 4, at 18–21, *with* ECF No. 1, at 16–19.) The Court denied Defendant's motion as moot on April 5, 2021. (ECF No. 5.)

On April 12, 2021, Defendant filed a motion to dismiss and/or strike the FAC. (ECF No. 6.) Plaintiff filed a response in opposition on April 28, 2021. (ECF No. 8.) Finally, on March 7, 2021, Defendant filed a reply brief. (ECF No. 10.)

#### B. Factual Allegations

The FAC alleges as follows. Defendant is a real estate firm located in San Diego, California. (FAC, ECF No. 4, ¶¶ 33, 36, 42, 43, 46.) Defendant sent the following text message to Plaintiff's cellular phone eight times between July 26, 2019 and December 18, 2020: "Hi Kimberly, it's Eric with GG Homes. Do you know of any off-market deals or pocket listing [sic] not yet on MLS? We're looking for fixers in San Diego. Budget is up to $600K. You can TRIPLE END any off market deal you bring us!" (FAC ¶¶ 6, 12, 15, 33, 47–48, 50.) Plaintiff alleges that these messages were sent by Eric Lucas, who she further alleges is an employee of Defendant. (FAC ¶¶ 6, 33.) Plaintiff also appears to allege that Defendant placed telephone calls to Plaintiff's cell phone number but provides no detail as to the nature of those calls. (FAC ¶¶ 11, 13, 17, 19, 41, 43, 46–48, 50, 56–58.) Plaintiff alleges that these calls and texts violated her right to privacy. (FAC ¶¶ 21, 49, 56.)

Plaintiff alleges Defendant texted her "directly and through [its] controlled employees or agents." (FAC ¶ 11.) Plaintiff further alleges that Defendant's President and CEO instructed its employees to make and send the calls and texts at issue both orally and in writing. (FAC ¶¶ 13, 15, 17, 42.)

Plaintiff also alleges Defendant used an Automatic Telephone Dialing System ("ATDS"), or robo-dialer, to send the text messages at issue to her cell phone. (FAC ¶¶ 3, 12, 24, 34–35, 43, 60.) At all relevant times, Plaintiff's phone number was listed on the National Do Not Call ("DNC") Registry. (FAC ¶¶ 7, 8, 18, 41.) Plaintiff claims that she did not consent to receiving any calls or text messages from Defendant. (FAC ¶ 11, 19, 22, 24, 45, 50.)

Based on these calls and texts, Plaintiff filed the present action against Defendant, alleging negligent

and intentional violations of the TCPA arising under [47 U.S.C. §§ 227(b)(1)(A)](...) and [227(c)(5)](...). (ECF No. 4 at 18–21.) Defendant now moves to dismiss, challenging Plaintiff's standing to bring this action and arguing Plaintiff has failed to state a claim under the TCPA. (ECF No. 6 at 17–33.) Defendant also moves to strike various allegations in the FAC. (*Id.* at 34.)

## II.

## LEGAL STANDARDS

**\*2** Pursuant to [Rule 12(b)(1) of the Federal Rules of Civil Procedure](...), a party may move to dismiss based on the court's lack of subject matter jurisdiction. *See* [Fed. R. Civ. P. 12(b)(1)](...). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." [*Stevedoring Servs. of Am., Inc. v. Eggert*, 953 F.2d 552, 554 (9th Cir. 1992)](...) (quoting [*Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989)](...)). "[Article III of the Constitution](...) confines the federal courts to adjudication of actual 'Cases' and 'Controversies.' " [*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992)](...). "The [Article III](...) case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing." [*Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010)](...) (citing [*Allen v. Wright*, 468 U.S. 737, 750 (1984)](...)). Consequently, a "lack of [Article III](...) standing requires dismissal for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure 12(b)(1)](...)." [*Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)](...) (emphasis omitted).

A motion to dismiss pursuant to [Rule 12(b)(6) of the Federal Rules of Civil Procedure](...) tests the legal sufficiency of the claims asserted in the complaint. *See* [Fed. R. Civ. P. 12(b)(6)](...); [*Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001)](...). In deciding a motion to dismiss, all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. [*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996)](...). A court, however, need not accept all conclusory allegations as true. Rather, it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." [*Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992)](...) (citation omitted); *see* [*Benson v. Ariz. State Bd. of Dental Exam'rs*, 673 F.2d 272, 275–76 (9th Cir. 1982)](...) (court need not accept conclusory legal assertions). A motion to dismiss should be granted if a plaintiff's complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)](...). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)](...) (citing [*Twombly*, 550 U.S. at 556](...)). However, the complaints of pro se plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." [*Erickson v. Pardus*, 551 U.S. 89, 94 (2007)](...) (per curiam); *see also* [*Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)](...).

## III.

## DISCUSSION

**A. Standing**

Defendant challenges whether Plaintiff has constitutional and statutory standing to bring this case. First, Defendant argues Plaintiff has not met the requirements for standing under [Article III](...). Second, Defendant argues Plaintiff is not within the zone of interests Congress intended to protect in passing the TCPA. These arguments are addressed in turn.

**1. [Article III](...) Standing**

Defendant contends Plaintiff lacks [Article III](...) standing to bring a claim under the TCPA. In *Spokeo, Inc. v. Robins*, the Supreme Court reiterated the "irreducible constitutional minimum" of standing under Article

III: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." [136 S. Ct. 1540, 1547 (2016)](citations omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citation omitted). Defendant argues that (1) Plaintiff cannot satisfy the injury-in-fact requirement because she consented to receiving communications from Defendant "by voluntarily posting her mobile number online in connection with her real estate business," and (2) Plaintiff fails to adequately plead that her purported harm is traceable to Defendant's alleged use of an ATDS or redressable by the Court. (ECF No. 6-1, at 17–20 (emphasis omitted).)

a. Injury

**\*3** In *Spokeo*, the Supreme Court held that "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" [136 S. Ct. at 1548](quoting [*Lujan*, 504 U.S. at 560](.)). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting [*Lujan*, 504 U.S. at 560 n.1](.)). In contrast, "[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (citing Black's Law Dictionary 479 (9th ed. 2009)) (emphasis in original). "Article III standing requires a concrete injury even in the context of a statutory violation." [*Spokeo*, 136 S. Ct. at 1549](.). In general, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* A "bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement of [Article III](.). *Id.* However, the Supreme Court recognized that Congress may "'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting [*Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 775–77 (2000)](.)) (emphasis in original). "'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quoting [*Lujan*, 504 U.S. at 580](.) (Kennedy, J., concurring)). Therefore, a "violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.*

The TCPA prohibits making "any call ... using any automatic telephone dialing system ... to any telephone number assigned to a ... cellular telephone service" unless the call is "made with the prior express consent of the called party." [47 U.S.C. § 227(b)(1)(A)(iii)](.). A text message is a "call" within the meaning of the TCPA. [*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)](.). The TCPA also provides a private right of action to individuals seeking to enjoin or recover damages for violations of the Act or regulations promulgated under its authority. [47 U.S.C. § 227(b)(3)](.), [227(c)(5)](.). The regulations promulgated under this statute prohibit "any person or entity" from "initiat[ing] any telephone solicitation" to "wireless telephone numbers" registered on national do-not-call registry. [47 C.F.R. §§ 64.1200(c)](.), [64.1200(e)](.).

Here, Plaintiff alleges that Defendant's calls and texts to the wireless telephone number she registered on the DNC registry invaded her privacy. (FAC ¶ 21, 49, 56.) Plaintiff argues that this invasion of her privacy constitutes an injury-in-fact conferring [Article III](.) standing.

The Ninth Circuit has held that a single telephone call or text message can be sufficient to satisfy Article III's injury-in-fact requirement because "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients." [*Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)](.) (holding that "a violation of the TCPA is a concrete, *de facto* injury"). Defendant contends that Plaintiff's allegations do not satisfy the injury-in-fact requirement because "the texts at issue were neither unsolicited nor

consumer messages." (ECF No. 6-1 at 18.) Defendant argues *Van Patten* should be read narrowly and only applies to calls to consumers. (*Id.*) Defendant cites two unpublished district court decisions in support of its argument that Plaintiff's use of her phone number for business purposes makes her unable to satisfy the injury requirement for [Article III](#) standing. Both cases are inapposite.

First, Defendant highlights language from *Selby v. Ocwen Loan Servicing, LLC*, 3:17-cv-0973, [2017 WL 5495095, at \*3 (S.D. Cal. Nov. 16, 2017)](#), in which the court observed *Van Patten* "did not hold that receipt of any telephone call satisfies the concrete injury in fact requirement for standing to assert TCPA claims." However, the calls at issue in *Selby* related to the defendant's efforts to collect a debt, not an attempt to initiate a commercial transaction as in *Van Patten*, or as in the present case. *Id.* Furthermore, the Ninth Circuit has recognized that "[t]he TCPA is not limited to telemarketing calls" because "Congress recognized unsolicited contact as a concrete harm regardless of caller or content, and this harm is similar in kind to harm that has traditionally been redressable by courts." [*Romero v. Department Stores Nat'l Bank*, 725 F. App'x 537, 539 (9th Cir. 2018)](#) (citing [*Van Patten*, 847 F.3d at 1042–43](#)).

**\*4** Second, Defendant quotes *Chennette v. Porch.com, Inc.* for the proposition that "[i]t is unfathomable that Congress considered a consumer who files TCPA actions as a business when it enacted the TCPA." 1:20-cv-00201-SRB, [2020 WL 5511515, at \*2 (D. Idaho Sept. 2, 2020)](#) (quoting [*Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 805 (W.D. Pa. 2016)](#)). *Stoops* involved a repeat TCPA plaintiff who purchased dozens of cell phones "for the purpose of filing lawsuits." 197 F. Supp. 3d at 778. The court held that plaintiffs like Ms. Stoops who purchase phones solely to manufacture TCPA actions as a business cannot claim that receiving such calls constitute an injury sufficient to establish standing. [*Id.* at 796–804](#). The Court in *Stoops* did not hold that calls to phone numbers used partially for business reasons cannot generate a constitutionally cognizable injury. The Court therefore declines to follow *Chennette*'s approach to evaluating injury-in-fact under the TCPA.

Defendant also attempts to introduce extrinsic evidence of Plaintiff's business practices and purported public listing of her phone number online to demonstrate that she consented to Defendant's calls and texts. (ECF No. 6-1 at 18–19.) In a facial jurisdictional challenge, a court takes all factual allegations in the complaint as true and draws all reasonable inferences in a plaintiffs' favor. [*Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)](#). In considering such challenges, the Court may also "review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations." [*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1041 (9th Cir. 2004)](#). But "a jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." [*Id.* at 1039](#) (internal quotation omitted). Here, whether Plaintiff gave "express consent" is a necessary requirement of her TCPA claim. *See* [47 U.S.C. § 227(b)(1)(A)(iii)](#); *see also* [*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042–43 (9th Cir. 2012)](#) (listing "express consent" as an element of a [Section 227(b)](#) claim). It is also the basis of Defendant's jurisdictional challenge. Therefore, "there is no way that the Court can resolve [Defendant]'s factual attack on the Court's jurisdiction without also deciding the merits of [Plaintiff]'s TCPA claim." [*Aleisa v. Square, Inc.*, 493 F. Supp. 3d 806, 813 (N.D. Cal. 2020)](#) (holding that it is inappropriate to consider extrinsic evidence offered to attack consent in the context of standing analysis on motion to dismiss because it goes to the merits of plaintiff's TCPA claim); *see also* [*Romero*, 725 F. App'x at 539](#) (citing [*Van Patten*, 847 F.3d at 1043–48](#)) ("Disputes regarding whether [plaintiff] gave prior express consent to receive calls from [defendant] or revoked that consent go to the merits of her TCPA claim, not to her standing."). Accordingly, the Court

finds that this issue is inappropriate for consideration on a motion to dismiss.

In light of these authorities, the Court finds that Plaintiff has sufficiently alleged concrete and particularized injuries to establish Article III standing.

### b. Traceability and Redressability

Defendant further argues Plaintiff fails to plead that her alleged injury is traceable to Defendant's allegedly unlawful conduct or redressable by Defendant. (ECF No. 6-1 at 19–20.) Injury alone is insufficient to establish Article III standing. To confer constitutional standing, an injury must also be "fairly traceable to the challenged action of the defendant," and it must be "likely ... that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61. Here, Plaintiff alleges that Defendant called her cell phone, which is listed in the DNC registry, using an ATDS without her consent. This is sufficient for traceability. *See Romero*, 725 F. App'x at 538–39 (holding plaintiff demonstrated traceability where defendant used an autodialer to call her cell phone.) The alleged injury is also likely to be redressed by a favorable decision from the Court. Plaintiff has satisfied the requirements for Article III standing as to her claim under 47 U.S.C. § 227(b)(1)(A)(iii).

### 2. Statutory Standing

*5 Under the doctrine of statutory standing, a "statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (citation and quotation marks omitted). "Whether a plaintiff comes within 'the zone of interests' is an issue that requires [courts] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Id.* at 127. In applying this zone of interests test, courts "do not ask whether [...] Congress *should* have authorized [plaintiff's] suit, but whether Congress in fact did so." *Id.* at 128. Indeed, the test "is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399–400 (1987).

Citing legislative history and regulatory findings from the Federal Communications Commission ("FCC"), Defendant argues that Plaintiff lacks statutory standing to bring this case because the TCPA was not intended to prohibit business communications that were solicited by the recipient. (ECF No. 6-1 at 20–23.) However, the Court need not venture outside the plain text of the TCPA, and the regulations promulgated thereunder to determine what interests Congress protected in enacting the statute.

First, the TCPA unambiguously prohibits "*any* call" made using an ATDS "to *any* ... cellular telephone" without express consent. 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). The statute does not distinguish between telemarketing calls and calls to businesses. Nor does it distinguish between personal cellular telephones or cellular telephones used for business. The statute further provides that "any person or *entity*" may bring a cause of action for a violation. *Id.* § 227(b)(3) (emphasis added). Congress' inclusion of *entities* as parties entitled to sue under the private right of action further indicates that the interests of businesses are encompassed within the zone of interests protected by the statute. *See Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021) (stating "Congress passed the TCPA to address 'the proliferation of intrusive, nuisance calls' to consumers ***and businesses*** from telemarketers") (citations omitted and emphasis added). The FAC alleges Defendant texted Plaintiff's cellular phone using an ATDS without her consent, so Plaintiff falls within the zone of interests protected by the TCPA's ATDS provisions.

Second, the TCPA directs the FCC to promulgate regulations "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object" and to "a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." *Id.* §§ 227(c)(1), 227(c)(3). The TCPA further empowers

the FCC with the discretion to "implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." Id. § 227(c)(1)(E). Finally, the TCPA provides that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for injunctive relief, damages, or both. Id. § 227(c)(5).

Under this authority, the FCC promulgated rules prohibiting "*any* telephone solicitation to ... a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). As previously noted, this regulation is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers." Id. § 64.1200(e). The regulation defines 'telephone solicitation' as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." Id. § 64.1200(f)(15). This definition does not distinguish between solicitation to businesses and to consumers. Plaintiff's complaint alleges that Defendant sent texts to her wireless phone number encouraging the purchase of property. As such, Plaintiff falls within the zone of interests protected by the TCPA's DNC registry provisions.

**\*6** Even if the statute protected a narrower zone of interests than described above, Defendant would be unable to demonstrate that Plaintiff falls outside that zone. Plaintiff alleges that the calls and texts at issue in this case were directed to her personal cell phone and that she did not consent to receiving them. (FAC ¶¶ 7, 11, 19, 45, 50, 60–61.) Defendant relies on evidence extrinsic to the FAC purporting to show that Plaintiff's cell phone was used for business purposes and that she solicited the communications at issue. (ECF No. 6-1 at 22.) However, the Court declines to consider extrinsic evidence at this stage of the proceedings. *See Ngheim v. Dick's Sporting Goods, Inc.*, 222 F. Supp. 3d 805, 812–13 (C.D. Cal. 2016). Accordingly, the Court finds that Plaintiff has statutory standing to bring her claims under the TCPA.

### B. Sufficiency of the TCPA Claims

Defendant argues the FAC must be dismissed because Plaintiff (1) alleges insufficient facts to support a claim that Defendant is liable for the texts at issue, (2) fails to state a claim for an ATDS violation under Section 227(b) of the TCPA, and (3) fails to state a claim for a DNC violation under Section 227(c) of the TCPA.

#### 1. Defendant's Liability

Defendant argues Plaintiff's TCPA claims must be dismissed because she fails to adequately allege that Defendant physically sent the text messages at issue, and thus fails to plead sufficient facts to find Defendant liable for those texts. (ECF No. 6-1 at 23–26.)

To be liable under the TCPA, a defendant must "make" or "initiate" the call or text at issue. 47 U.S.C. §§ 227(b)(1)(A)(iii), 227(c)(5); 47 C.F.R. §§ 64.1200(a)(1)(iii), 64.1200(c)(2). Congress also delegated the authority to make rules and regulations implementing the TCPA to the FCC. *Satterfield*, 569 F.3d at 953 (citing 47 U.S.C. § 227(b)(2)). Pursuant to this authority, the FCC issued a Declaratory Ruling and Order, providing guidance for determining who makes or initiates a call, in light of the "changes in calling technology." *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7978–84 (2015) ("FCC Order"), *rev'd in part on other grounds by ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). To determine whether a party is the maker of a call, the FCC looks to "the totality of the facts and circumstances surrounding the placing of a particular call to determine: (1) who took the steps necessary to physically place the call; and (2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." *Id.* at 7980; *see also In the Matter of the Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013) ("a person or entity 'initiates'

a telephone call when it takes the steps necessary to physically place a telephone call"). Because the TCPA does not define the term "to make any call" and the FCC's interpretation of this provision of the TCPA is reasonable, the Court uses the FCC Order to inform its analysis. *See* [Satterfield, 569 F.3d at 953](); *see also* [Van Patten, 847 F.3d at 1048]() (finding reasonable the FCC's interpretation of the TCPA in the 2015 FCC Order).

Plaintiff alleges Defendant instructed its employee, Eric Lucas, to text Plaintiff. (FAC ¶¶ 6, 11, 13.) More specifically, Plaintiff alleges that GG Homes CEO Paul Eric Green told Mr. Lucas both verbally and via email to send the texts. (FAC ¶¶ 6, 15, 42.) These allegations are sufficient to support Plaintiff's claims that Defendant made or initiated the texts at issue. The Court therefore finds that Plaintiff has adequately alleged Defendant's liability in this case.

2. [Section 227(b)]()

Defendant argues Plaintiff fails to state a claim under Section 227(b) of the TCPA. (ECF No. 6-1 at 26–31.)

To state a claim under [47 U.S.C. § 227(b)(1)(a)](), a plaintiff must plausibly allege "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." [Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1042–43 (9th Cir. 2012)](). Defendant's argument has three parts.

*7 First, Defendant argues Plaintiff's FAC fails to state a claim because it lacks facts sufficient to allege that Defendant used an ATDS. (ECF No. 6-1 at 27–29.) In *Facebook v. Duguid*, the Supreme Court recently held that "to qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." [141 S. Ct. at 1167](). Defendant argues this definition is fatal to Plaintiff's ATDS claims. The Court disagrees.

The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage. *See Montanez v. Future Vision Brain Bank, LLC*, 20-cv-02959-CMA-MEH, [2021 WL 1697928, at *7 (D. Colo. Apr. 29, 2021)](). Here, Plaintiff alleges Defendant used an ATDS to send her numerous text messages over the course of a year. (FAC ¶¶ 3, 11, 12, 34–35, 43, 56.) She further alleges that the ATDS Defendant used "has the capability to insert a new name for each person [to whom] it sends spam text messages" and "the capacity to store numbers and dial them automatically." (FAC ¶¶ 2, 14.) While additional factual details about Defendant's equipment might be helpful, they are not required at the pleading stage. *See* [In re Jiffy Lube Int'l, Inc., Text Spam Litig., 847 F. Supp. 2d 1253, 1260 (S.D. Cal. 2012)](). At this stage of the proceedings, particularly under notice pleading standards of [Rule 8(a)(2) of the Federal Rules of Civil Procedure](), which requires only a "short and plain statement of the claim," Plaintiff need not include additional details concerning the process by which Defendant's device stores and produces phone numbers. Plaintiff need not describe the technical details of Defendant's alleged ATDS at this stage. This issue is appropriately addressed following discovery and on a motion for summary judgment.

Second, Defendant argues Plaintiff failed to plead that the texts she received constituted "advertisements" or "telemarketing." (ECF No. 6-1 at 29–30.) Pursuant to the FCC regulations, ATDS calls to cell phones that either introduce an "advertisement" or constitute "telemarketing" require "prior express *written* consent of the called party." [47 C.F.R. § 64.1200(a)(2)]() (emphasis added). Other calls only require express consent—which need not be written. [Id. § 64.1200(a)(1)](). However, this distinction is immaterial because Plaintiff adequately alleges she did not consent to receiving the texts.

Third, Defendant argues Plaintiff provided her prior express consent to receive the texts at issue by advertising her cell phone number online. (ECF No. 6-1 at 30–31.) Assuming the texts here are not advertisements or telemarketing calls, only "prior express consent" is required to defeat Plaintiff's claim. *See* [47 C.F.R. § 64.1200(a)(1)(A)(iii)](); *see also* [Reardon v. Uber Technologies, Inc., 115 F. Supp. 3d 1090, 1094 (N.D. Cal. 2015)]() (holding that "if a text message 'includes or introduces an advertisement' or

'constitutes telemarketing,' it may only be sent with the recipient's prior express written consent, whereas other texts require only prior express consent to be legal."). If Plaintiff consented to receiving the texts, her [Section 227(b)](#) claims fail.

Plaintiff alleges that she did not consent to receiving any calls or texts from Defendant. (FAC ¶¶ 11, 19, 22, 24, 45, 50.) Defendant introduces evidence that Plaintiff posted her cell phone number online in connection with her real estate business, and thus invited business related calls. (ECF No. 6-1 at 31.) Because the parties have yet to conduct discovery, the Court declines to consider Defendant's evidence at this stage.[1] Nothing in the FAC indicates that Plaintiff consented to Defendant's texts. Therefore, the Court declines to dismiss the [Section 227(b)](#) claims on this ground.

[1] Defendant cites *Edelsberg v. Vroom, Inc.*, 16-cv-62734-GAYLES, [2018 WL 1509135 (S.D. Fla. Mar. 27, 2018)](#), as an example of a court finding that voluntarily posting one's phone number online constitutes express consent under the TCPA. (ECF No. 6-1 at 31.) However, the court in *Edelsberg* addressed this issue on a motion for summary judgment, not a motion to dismiss.

**\*8** Because Plaintiff has sufficiently alleged the elements of a [Section 227(b)](#) claim, Defendant's motion to dismiss Counts I and II of the FAC is denied.

### 3. [Section 227(c)](#)

Defendant argues Plaintiff failed to state a claim under Section 227(c) of the TCPA. (ECF No. 6-1, at 31–33.) The TCPA directs the FCC to promulgate regulations to protect residential telephone subscribers' privacy rights. [47 U.S.C. § 227(c)(1)–(2)](#). Pursuant to this authority, [47 C.F.R. § 64.1200(c)(2)](#) prohibits "telephone solicitation" to any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons. The TCPA creates a private right of action for anyone "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the [FCC] regulations." [47 U.S.C. § 227(c)(5)](#).

First, Defendant argues Plaintiff failed to adequately allege that Defendant "physically" sent the texts at issue. The Court has already rejected this argument. *See supra* Section II.B.1. Second, Defendant argues the texts in this case do not constitute "telephone solicitation." The relevant FCC regulation defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." [47 C.F.R. § 64.1200(f)(14)](#). Defendant contends that the texts it allegedly sent to Plaintiff are more akin to an offer of employment than encouragement to purchase or invest in property or services. Defendant cites *Freyja v. Dun & Bradstreet, Inc.*, where the court found that a call "made for the purpose of acquiring information about the commercial services provided by Plaintiff and not to market to Plaintiff or to sell her anything" did not constitute a telephone solicitation as a matter of law. CV 14–7831 DSF, [2015 WL 6163590, at \*2 (C.D. Cal. Oct. 14, 2015)](#). Here too, the communication at the core of the dispute is targeted at procuring services from Plaintiff. *See supra* Section II.B.2. Therefore, the texts at issue do not fall within the definition of telephone solicitation under the TCPA and Plaintiff's [Section 227(c)](#) claims are subject to dismissal. Third, Defendant introduces extrinsic evidence to show Plaintiff's phone was used for business purposes. For the reasons discussed above, the Court declines to consider this evidence at the pleadings stage. *See supra* Sections II.A.2 and II.B.2. Because the text at issue in this case did not constitute "telephone solicitation" under the TCPA, the Court dismisses counts III and IV of the FAC.[2]

[2] Dismissal of a pro se plaintiff's complaint is only appropriate where "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." [*Weilbeurg v. Shapiro*, 488 F.3d 1202, 1205 (9th Cir. 2007)](#) (quotation omitted). Here, Plaintiff's FAC contains a verbatim quotation of the text messages at issue. (*See* FAC

¶ 6.a.) Because the messages do not constitute telephone solicitations Plaintiff cannot amend her complaint to state a claim.

See [Airs Aromatics, LLC v. Opinion Victoria's Secret Store Brand Mgmt., Inc., 744 F.3d 595, 600 (9th Cir. 2014)](holding) that "[a] party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding") (internal quotation omitted). Therefore, Plaintiff's [Section 227(c)](#) allegations are dismissed with prejudice.

### C. Motion to Strike

**\*9** Defendant argues that various allegations in the FAC are "immaterial" and "impertinent" and should be stricken under [Fed. R. Civ. P. 12(f)](#). (ECF No. 6-1 at 34.) [Rule 12(f)](#) states that district courts "may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being plead." [*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)](#) *rev'd on other grounds*, [510 U.S. 517 (1994)](#) (quotation omitted). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* However, motions to strike are generally disfavored. *See Novick v. UNUM Life Ins. Co. of Am.*, 570 F. Supp. 1207, 1208 (C.D. Cal. 2008). Further, "motions to strike are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *Lobaton v. City of San Diego*, 3:15-cv-1416-GPC-DHB, [2015 WL 7864186, at \*4 (S.D. Cal. Dec. 2, 2015)](#) (citation omitted). Defendant asks the Court to strike fifteen paragraphs from the FAC. However, having reviewed the paragraphs at issue and considering Plaintiff's pro se status, the Court declines to strike them from the FAC.

### IV.

### CONCLUSION

For these reasons, the Court denies Defendant's motion to dismiss as to claims I and II of the FAC and grants the motion as to claims III and IV of the FAC. The Court also denies Defendant's motion to strike.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 2863623

---

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2021, I caused the foregoing papers to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys or parties of record.

By: /s/ *Harrison Brown*
       Harrison Brown

126438180